## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

_____

CARDX, LLC,

          Plaintiff,

v.

DEREK SCHMIDT, in his official
capacity as KANSAS ATTORNEY
GENERAL,

          Defendant.

_____

Case No. _____

COMPLAINT

### COMPLAINT

Plaintiff CardX, LLC ("CardX") seeks a declaration that Kan. Stat. Ann. 16a-2-403, *Prohibiting surcharge on credit or debit cards*, is unconstitutional as applied to the plaintiff.

### Introduction

1.    Over the past several decades, technological advances have revolutionized the ways consumers pay for goods and services. These profound advancements have impacted how sellers of goods and services—*i.e.*, merchants—set prices and receive payment from consumers. Taken together, the changes in how Americans buy and sell in the marketplace have created a heavily regulated environment where merchants must ensure that they meet all obligations under state and federal law, as well as their obligations to the private financial institutions and payment processors that facilitate the movement of capital throughout the economy.

2.      As payment options have diversified and compliance technology has evolved to meet the demands of consumers and merchants alike, certain antiquated statutes deserve fresh constitutional scrutiny.  That is especially true when those laws, tailored to different eras of commerce, purport to protect consumers but in fact do the exact opposite, all at the expense of merchants.

3.      One traditional method of payment—credit—remains popular with American consumers but is directly impacted by an anachronistic legal restriction on merchants.

4.      When a merchant accepts payment via credit card, that merchant bears the cost of credit card processing fees—typically a percentage of each transaction set by the payment card network and paid to the financial institutions that issue the credit cards and process the transactions.

5.      Under a Kansas state law enacted in 1986, colloquially known as the "no-surcharge law," merchants are statutorily prohibited from passing these costs along to customers as credit card "surcharges."  Kan. Stat. Ann. 16a-2-403; 1986 Kan. Sess. Laws, ch. 90, § 2.  In other words, the consumer's choice to use a particular form of payment—credit—causes the merchant's cost of doing business to increase.  The cost to the merchant of accepting credit is an order of magnitude higher than the cost of accepting cash or debit.  Paradoxically, however, merchants *are* permitted to offer a "discount" to buyers that choose a non-credit payment method, such as cash or debit.  *See* The Honorable Ken Francisco, Kan. Att'y Gen. Op. No. 86-115 (1986) ("[I]t is our opinion that a discount for cash payment is not a surcharge as

that term is used in Section 2.").  Discounts and surcharges are two sides of the same economic coin, but in Kansas, one is permissible while the other is unlawful.

6.    The 1986 legal prohibition against sellers implementing a credit-card surcharge in Kansas still exists despite the availability of sophisticated payment processing software, such as the product offered by plaintiff CardX.  CardX's software allows merchants to seamlessly pass along the cost of processing credit card transactions to the consumers that choose to use credit, while making all disclosures necessary to comply with applicable law.

7.    Other states' no-surcharge statutes have been invalidated as unconstitutional. Federal courts in California, Florida, New York, and Texas have held that laws substantively similar to Kansas's—those which prohibit credit card surcharges while allowing cash discounts—violate the First Amendment by impermissibly restricting commercial speech.  *See, e.g.*, *Italian Colors Rest. v. Becerra*, 878 F.3d 1165 (9th Cir. 2018) (holding California no-surcharge law "restricts plaintiffs' non-misleading commercial speech," "does not directly advance the Attorney General's asserted state interest in preventing consumer deception, nor is it narrowly drawn to achieving that interest" and therefore "violates the First Amendment"); *Dana's R.R. Supply v. Bondi*, 807 F.3d 1235 (11th Cir. 2015) (holding Florida no-surcharge law is "an unconstitutional abridgement of speech"); *Rowell v. Paxton*, 336 F. Supp. 3d 724 (W.D. Tex. 2018) (holding "[t]he Texas Anti-Surcharge law as applied violates the merchants' commercial free-speech rights under the First Amendment").

8.  Oklahoma Attorney General Mike Hunter recently issued an Opinion concluding
    that the Oklahoma no-surcharge law—which functionally mirrors the Kansas law—
    violates the First Amendment.[1]  *See* The Honorable Michael Brooks, Okla. Att'y
    Gen. Opinion No. 2012-12 (Dec. 17, 2019).

9.  Kansas's no-surcharge statute violates the First Amendment to the U.S.
    Constitution, as applied to the states through the Fourteenth Amendment, and is
    unconstitutionally vague in violation of the Due Process Clause of the Fourteenth
    Amendment.  CardX brings this constitutional challenge because CardX is unable to
    sell its software to Kansas merchants, who in turn are unable to pass on credit card
    processing costs to credit-paying consumers, due to the unconstitutional restriction
    imposed by Kansas's no-surcharge statute.

### Jurisdiction and Venue

10. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3).  Venue is
    proper in the District of Kansas under 28 U.S.C. § 1391(b).

### Parties

11. Plaintiff CardX is a financial technology company whose patent-pending payment
    processing software allows merchants to display and process price differentials in

---

[1] Attorney General Hunter's Opinion specifically found that (1) "Oklahoma's ban on surcharges for purchases using credit cards or debit cards . . . does not facially violate the First Amendment to the U.S. Constitution"; and (2) "Oklahoma's ban on surcharges for purchases using credit cards or debit cards . . . would violate the first Amendment to the U.S. Constitution in the pricing schemes discussed in *Italian Colors Restaurant v. Becerra*, 878 F.3d 1165 (9th Cir. 2018) and *Rowell v. Paxton*, 336 F. Supp. 3d 724 (W.D. Tex. 2018) if interpreted consistent with the plain meaning of the surcharge."  The Honorable Michael Brooks, Okla. Att'y Gen. Opinion No. 2012-12 (Dec. 17, 2019) (internal citations omitted) (noting that "[a]n attorney general opinion that concludes an 'act of the legislature is unconstitutional should be considered advisory only, and thus not binding until finally so determined by an action in the District Court of [Oklahoma]." (quoting *Slate ex rel. York v. Turpen*, 681 P.2d 763, 767 (Okla. 1984))).

4

compliance with all applicable laws and restrictions.  CardX helps merchants create cost transparency and equips consumers to "comparison shop" among payment types, by passing on the processing fee for credit cards and enabling consumers to choose other payment options at no cost.  CardX provides its software to businesses of all sizes, along with government entities and educational institutions.

12. Kansas merchants are prohibited from using CardX's software as a result of its no-surcharge law.  CardX's standard pricing model displays the price of the good or service, plus the cost associated with credit card use as a percentage of the price. For example, the price display or invoice will state "$10 + 3.5% fee for credit." This pricing model, often referred to as "single-sticker" pricing, is squarely prohibited by the current Kansas law.

13. Although certain government and educational institutions are exempt from the Kansas no-surcharge law, CardX is prevented from selling its product to non-governmental Kansas merchants because the no-surcharge law directly prohibits the core function of CardX's payment processing software.

14. Defendant Derek Schmidt is the Kansas Attorney General, is the chief legal officer for the state, and is responsible for enforcing the Kansas no-surcharge law.  He is sued in his official capacity.

### Factual Background

***Federal and private contractual bans on credit card surcharges no longer exist***

15. In 1976, Congress amended the Truth in Lending Act ("TILA") to implement a federal ban on credit card surcharges.  Act of Feb. 27, 1976, Pub. L. No. 94-222, §

3(c)(1) (formerly codified at 15 U.S.C. § 1666f(a)(2)) ("No seller in any sales transaction may impose a surcharge on a cardholder who elects to use a credit card in lieu of payment by cash, check, or similar means.").[2]

16. Around the time that the federal surcharge ban lapsed in 1984, Kansas and nine other states (California, Colorado, Connecticut, Florida, Maine, Massachusetts, New York, Oklahoma, and Texas) enacted no-surcharge statutes.  The state versions of the surcharge ban similarly prohibited merchants from informing consumers that the use of a credit card to pay for a good or service would result in a surcharge on the price.

17. Merchants could, however, communicate the inverse: that paying with cash may result in a discount from the price.

18. In addition to the state laws, credit card companies historically included no-surcharge provisions in their merchant agreements, precluding merchants from passing on credit card processing fees to consumers.[3]  That practice ended in 2013 when major credit card providers agreed to remove such provisions from their merchant contracts.  *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 230-34 (E.D.N.Y. 2013), *rev'd and vacated*,

---

[2] This amendment also defined "discount" to mean "a reduction made from the regular price" and "surcharge" to mean "any means of increasing the regular price to a cardholder which is not imposed upon customers paying by cash, check, or similar means." *Id.* § 3(a) (codified at 15 U.S.C. § 1602(q)-(r)).

[3] An earlier amendment to TILA, which is still in effect, ensured that credit card companies could not contractually prohibit retailers from offering cash discounts. *See* Act of Oct. 28, 1974, Pub. L. No. 93-945, § 167 (codified at 15 U.S.C. § 1666f(a)) ("[T]he card issuer may not, by contract or otherwise, prohibit any [retailer] from offering a discount to a cardholder to induce the cardholder to pay by cash, check, or similar means rather than use a credit card.").

827 F.3d 223 (2d Cir. 2016); *see also* Kevin Wack, *Once Banned, Credit Card Surcharges Gain Momentum*, AM. BANKER (Jan. 9, 2020).

***The Kansas no-surcharge law is the only remaining barrier to accurately communicating price differentials to Kansas consumers***

19.   With no federal or private contractual prohibitions on credit card surcharges, the Kansas no-surcharge law is the only remaining barrier to Kansas merchants and payment processing companies like CardX lawfully and accurately representing price differentials to consumers.

20.   The Kansas no-surcharge law states that "[n]o seller or lessor in any sales or lease transaction or any credit or debit card issuer may impose a surcharge on a card holder who elects to use a credit or debit card in lieu of payment by cash, check or similar means.  A surcharge is any additional amount imposed at the time of the sales or lease transaction by the merchant, seller or lessor that increases the charge to the buyer or lessee for the privilege of using a credit or debit card."  Kan. Stat. Ann. 16a-2-403.  Under a 1986 Kansas Attorney General Opinion, "a discount for cash payment is not a surcharge as that term is used in" the no-surcharge statute. *See* The Honorable Ken Francisco, Kan. Att'y Gen. Op. No. 86-115 (1986).

21.   When the surcharge prohibition was enacted and interpreted by the Attorney General in 1986, it may have been logistically challenging to clearly communicate price differentials to consumers.  Today, however, widely available technology exists to make the presentation of this information seamless, such as CardX's software.  Moreover, credit card usage in the United States has increased

dramatically in the interim:  in 1983, only 43 percent of U.S. families had a credit

card[4]; by 2018, 75.5 percent of U.S. consumers possessed a credit card.[5]

22.   Violations of Kansas's no-surcharge law are subject to, among other things,

administrative investigations, cease and desist orders, administrative fines, and civil

liability for consumer restitution and civil penalties.  Kan. Stat. Ann. 16a-6-101 *et

seq.*  The Attorney General actively enforces the no-surcharge law.  *See, e.g.*,

*Topeka Raintree Apartments LLC v. Kansas ex rel. Derek Schmidt*, No. 2019-CV-

000440 (Shawnee Cnty. Dist. Ct.); Denise Neil & Amy Renee Leiker, *Wichita

Restaurant to Pay More Than $60,000 for Overcharging Customers Using Credit

Cards*, THE WICHITA EAGLE (Feb. 25, 2020).

23.   Kansas merchants remain obligated to absorb the costs of a customer's choice to use

a credit card precisely because state law makes it impossible to communicate price

differentials in a compliant manner.  In response, merchants opt to post only one

higher price—a price that is by design high enough to cover transactions in which

credit cards are used—to offset the credit card fees.  This effectively forces cash

customers to pay a higher price and subsidize the benefits enjoyed by credit card

customers.

24.   CardX is unable to operate in Kansas because the no-surcharge law prohibits the

exact type of commercial speech that CardX's technology is designed to convey.

---

[4] This figure reflects general-purpose revolving credit cards and excludes retail store cards.  *See* Thomas A. Durkin, *Credit Cards: Use and Consumer Attitudes, 1970-2000*, FED. RESERVE BULL., at 625 (Sept. 2000).
[5] *See* Kevin Foster, Claire Greene, & Joanna Stavins, *The 2018 Survey of Consumer Payment Choice: Summary Results*, FED. RESERVE BANK OF ATLANTA RESEARCH DATA REPS., T-3 (Aug. 28, 2019).

This prohibition directly impacts CardX's business operations and financial opportunities.

***Federal courts have held that no-surcharge statutes unconstitutionally restrict commercial speech***

25. The Kansas law draws an arbitrary line that prohibits credit card surcharges yet allows cash discounts.  Federal courts have determined that substantively similar "no-surcharge" laws in California, Florida, New York, and Texas unconstitutionally restricted commercial speech.

26. In 2013, the New York no-surcharge law was challenged as unconstitutionally regulating commercial speech and being unconstitutionally vague.  In *Expressions Hair Design v. Schneiderman*, the U.S. District Court for the Southern District of New York agreed with the plaintiffs that the statute "draws the line between prohibited 'surcharges' and permissible 'discounts' based on words and labels, rather than economic realities," and accordingly "clearly regulates speech, not conduct, and does so by banning disfavored expression."  975 F. Supp. 2d 430, 444 (S.D.N.Y. 2013).  Following reversal by the Second Circuit, 808 F.3d 118 (2d Cir. 2015), the U.S. Supreme Court held that the New York no-surcharge statute, "[i]n regulating the communication of prices rather than prices themselves," regulates speech and is therefore subject to First Amendment scrutiny.  137 S. Ct. 1144, 1151 (2017).[6]  The Supreme Court's review was limited to the question of whether the

---

[6] The case was remanded to the Second Circuit for analysis as a commercial speech regulation. On remand, the Second Circuit certified a question to the New York Court of Appeals regarding what

no-surcharge statute was unconstitutional as applied to a "single-sticker" pricing

model, in which a merchant would "post[] a cash price and an additional credit card

surcharge, expressed either as a percentage surcharge or a 'dollars-and-cents'

additional amount." *Id.* at 1149.

27.   The Supreme Court held that no-surcharge statutes are subject to intermediate

scrutiny under *Central Hudson Gas & Electric Corp. v. Public Service Commission

of New York*, 447 U.S. 557 (1980). "The States . . . are free to prevent the

dissemination of commercial speech that is false, deceptive, or misleading."

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626,

638 (1985). However, under *Central Hudson*, if commercial speech "is neither

misleading nor related to unlawful activity," then "the State must assert a substantial

interest to be achieved by" the regulation. 447 U.S. at 563-64. The law must

directly advance the asserted interest, and must not be "more extensive than is

necessary to serve that interest." *Id.* at 566.

28.   Applying that standard of review, federal courts have struck down the no-surcharge

statutes of California, Florida, and Texas for violating the First Amendment. *See

Italian Colors Rest. v. Becerra*, 878 F.3d 1165 (9th Cir. 2018); *Dana's R.R. Supply*

---

constitutes compliance with the New York anti-surcharge law. 877 F.3d 99, 102 (2d Cir. 2017). In
October 2018, the New York Court of Appeals responded to the certified question as follows: a merchant
is in compliance with the law so long as they disclose the total dollars-and-cents price charged to credit
card users. A "single-sticker" pricing scheme, which requires consumers to engage in an arithmetical
calculation to determine the price, is prohibited by the statute. No. 200, 2018 WL 5258853 (N.Y. Ct. App.
Oct. 23, 2018). Following this determination, the parties filed a joint motion to dismiss with the Second
Circuit. *See* Joint Affirm. in Support of Mot. to Vacate J. Below, Remand for Dismissal of the Compl.,
and Dismiss the Appeal as Moot, ECF No. 315-2 (Jan. 8, 2019).

*v. Att'y Gen. of Fla.*, 807 F.3d 1235 (11th Cir. 2015); *Rowell v. Paxton*, 336 F. Supp. 3d 724 (W.D. Tex. 2018).

29.    These courts all found that credit card surcharges constitute lawful activity and are not misleading. *Italian Colors Rest.*, 878 F.3d at 1176-77; *Dana's R.R. Supply*, 807 F.3d at 1249; *Rowell*, 336 F. Supp. 3d at 730.  They concluded that charging different prices for credit card and cash purchases is clearly lawful, as all three schemes explicitly permitted cash discounts—which are the "mathematical equivale[nt]" of credit card surcharges—and is not misleading so long as the price difference is communicated to consumers. *Italian Colors Rest.*, 878 F.3d at 1176; *Dana's R.R. Supply*, 807 F.3d at 1239, 1249; *Rowell*, 336 F. Supp. 3d at 730.

30.    The courts found that the state interests asserted were not advanced by the states' respective no-surcharge laws.  The California Attorney General "assert[ed] that the state's interest in banning surcharges is to 'promote the effective operation of the free market and protect consumers from deceptive price increases,'" *Italian Colors Rest.*, 878 F.3d at 1177, while the Florida and Texas Attorneys General each asserted "a generalized interest in consumer protection," *Dana's R.R. Supply*, 807 F.3d at 1249; *Rowell*, 336 F. Supp. 3d at 731.

31.    Although all three states asserted legitimate state interests, the courts all rejected the states' assertions that the no-surcharge statutes actually advanced those interests in consumer protection or promotion of commerce. *Italian Colors Rest.*, 878 F.3d at 1177; *Dana's R.R. Supply*, 807 F.3d at 1249-50; *Rowell*, 336 F. Supp. 3d at 731.  To the contrary, the Ninth Circuit observed that California's no-surcharge statute

"prevents retailers . . . 'from communicating with their customers in an effective and informative manner' about the cost of credit card usage and why credit card customers are charged more than cash users." *Italian Colors Rest.*, 878 F.3d at 1177 (quoting *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564 (2011)).  The Court stated that it "fail[ed] to see how a law that keeps truthful price information from customers increases the accuracy of information in the marketplace." *Id.*; *accord Dana's R.R. Supply*, 807 F.3d at 1250; *Rowell*, 336 F. Supp. 3d at 731 ("[T]here is no actual, empirical evidence before the court of harm to consumers or commerce, past or present, in restricting [] merchants . . . from communicating to their customers that they will charge a surcharge for a credit-card purchase[.]").

32. Both the Ninth and Eleventh Circuits pointed to broad exemptions in the California and Florida no-surcharge statutes for public agencies, "without . . . any relevant distinction between private merchants and state agencies that references the asserted interests being served," as further undermining the legitimacy of the states' purported interests in consumer protection. *Dana's R.R. Supply*, 807 F.3d at 1250; *Italian Colors Rest.*, 878 F.3d at 1177 ("Even if there were any evidence of consumer deception, or other harm to the free market, the statute's broad swath of exemptions would undermine any ameliorative effect.").

33. Finally, the *Central Hudson* test requires that the speech restriction be narrowly tailored to achieve the asserted state interest.  447 U.S. at 565-66.  The courts found that the California, Florida, and Texas no-surcharge statutes were "more extensive than [] necessary" to serve state interests of avoiding consumer deception and

promoting the free market.  *Rowell*, 336 F. Supp. 3d at 731.  They noted that "[t]he

available less [] restrictive alternatives are legion," *Dana's R.R. Supply*, 807 F.3d at

1250, such as imposing a cap on credit card surcharges, requiring specific points of

disclosure, "ban[ning] deceptive or misleading surcharges," or simply enforcing

"existing laws banning unfair business practices and misleading advertising in

pricing," *Italian Colors Rest.*, 878 F.3d at 1178.

**The Kansas no-surcharge law is an unconstitutional restriction on commercial speech**

34.  The Kansas no-surcharge law constitutes a restriction on commercial speech (not a

regulation of commercial activity), is subject to intermediate scrutiny, and violates

the First Amendment.

35.  The Kansas no-surcharge statute, like its unconstitutional analogues, cannot survive

intermediate scrutiny under the *Central Hudson* test:  the law does not advance any

legitimate state interest and, in any event, it is not narrowly tailored to serve any

such interest.

36.  The Kansas Attorney General clearly recognizes that charging different prices for

cash and credit card payments is not inherently misleading or unlawful, as the

statute has been interpreted to explicitly allow cash discounts.

37.  The no-surcharge law is not narrowly tailored to serve a substantial state interest.

Generalized state interests in consumer protection and promoting the free market do

not sufficiently justify a restriction on commercial speech.

38.  Similar to the California, Florida, and Texas statutes, the Kansas statute contains

myriad exemptions that undermine any purported purpose of consumer protection,

including exemptions for educational boards and institutions, and state and county entities. *See, e.g.*, Kan. Stat. Ann. K.S.A. 72-1176; Kan. Stat. Ann. 19-122; Kan. Stat. Ann. 75-30, -100.

39.   Federal courts have agreed that no-surcharge statutes fail to actually protect consumers or advance free market principles, as these paternalistic laws work to keep consumers uninformed about the rationale for price differentials and, therefore, unable to meaningfully participate in the free market.  Clearly communicating surcharges empowers consumers to make informed choices about how and where to spend their hard-earned money.

40.   Kansas can use any number of alternative enforcement mechanisms to prevent actual fraudulent or deceptive credit card surcharge practices, such as its Consumer Protection Act, Kan. Stat. Ann. 50-623 *et seq.*

**The Kansas no-surcharge law is unconstitutionally vague**

41.   "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required."  *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (citing *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)).  This principle "requires the invalidation of laws that are impermissibly vague."  *Id.*  A law is impermissibly vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Id.* (internal quotations omitted).

42. The Kansas no-surcharge law arbitrarily distinguishes between a "surcharge" and a "discount," and prohibits the former while permitting the latter.  These two terms describe the exact same conduct; "[t]autologically speaking, surcharges and discounts are nothing more than two sides of the same coin[.]"  *Dana's R.R.* Supply, 807 F.3d at 1249.  This "virtually incomprehensible distinction between what a vendor can and cannot tell its customers" offends the Due Process Clause of the Fourteenth Amendment, because it does not allow a person of ordinary intelligence reasonable opportunity to know what is prohibited, and invites arbitrary and discriminatory enforcement.  *Expressions Hair Design*, 975 F. Supp. 2d at 436.

## Claims for Relief

### Claim One:  Violation of the First Amendment (under 42 U.S.C. § 1983)

43. Kansas's no-surcharge law regulates how merchants and payment processing companies like CardX may describe the price differences lawfully charged for credit and cash purchases.  The law allows communication of a price differential as a "cash discount," but prohibits description of the exact same price differential as a "credit card surcharge."  This meaningless distinction renders CardX unable to conduct business in the state, and at risk of incurring civil liability if it did so.  This speech restriction violates CardX's rights under the First Amendment, as applied to the states through the Fourteenth Amendment.

### Claim Two:  Void for Vagueness (under 42 U.S.C. § 1983)

44. Kansas's no-surcharge law subjects CardX to liability based on a vague distinction between two terms that describe the same conduct.  This does not provide a person

of ordinary intelligence reasonable opportunity to know what is prohibited, and invites arbitrary and discriminatory enforcement.  The no-surcharge law is therefore unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment.

### Request for Relief

45.  For the reasons stated above, the plaintiffs request that the Court declare that Kansas's no-surcharge law, Kan. Stat. Ann. 16a-2-403, is unconstitutional.

Dated:  May 29, 2020

Respectfully submitted,

POLSINELLI PC


By:  s/ Timothy J. Sear
      TIMOTHY J. SEAR (KS #14813)
      JOHN D. PETERSEN (KS #09775)
      900 West 48th Place, Suite 900
      Kansas City, MO  64112
      Telephone:    (816) 753-1000 (Main)
      Facsimile:    (816) 753-1536 (Main)
      E-mail:     tsear@polsinelli.com
      E-mail:     jpetersen@polsinelli.com

AND

COZEN O'CONNOR
BERNARD NASH (DC #231118)
SEAN J. RILEY (DC #1048065)
KETURAH TAYLOR (DC #241560)
(above pending admission *pro hac vice*)
1200 19th Street, NW, Suite 300
Washington, D.C.  20036
Telephone:    (202) 471-3406
Facsimile:    (202) 861-1905
E-mail:     bnash@cozen.com
E-mail:     sriley@cozen.com
E-mail:     ktaylor@cozen.com

ATTORNEYS FOR PLAINTIFF
CARDX, LLC

17