## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

———————————————————

CARDX, LLC,

       Plaintiff,

v.

                                              Case No. 2:20-cv-02274-JWB-GEB

DEREK SCHMIDT, in his official
capacity as KANSAS ATTORNEY
GENERAL,

       Defendants.

———————————————————

## <u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S</u>
## <u>MOTION FOR SUMMARY JUDGMENT</u>

## Table of Contents

**Page**

INTRODUCTION ........................................................................................................ 1

BACKGROUND:  THE HISTORY OF NO-SURCHARGE RULES ........................................ 2

STATEMENT OF UNCONTROVERTED MATERIAL FACTS ................................................ 4

    I.   The Kansas No-Surcharge Statute ...................................................................... 4

    II.  Impact of the No-Surcharge Statute on Kansas Consumers and Businesses .................... 6

    III. Plaintiff CardX ........................................................................................... 8

ARGUMENT ............................................................................................................. 11

    I.   THE KANSAS NO-SURCHARGE STATUTE RESTRICTS CARDX'S
        COMMERCIAL SPEECH IN VIOLATION OF THE FIRST AMENDMENT ............. 11

        A.  The Kansas No-Surcharge Statute Is Subject to Intermediate Scrutiny Under the First
            Amendment Because It Restricts Commercial Speech ................................. 13

        B.  The Kansas No-Surcharge Statute Fails Intermediate Scrutiny .................................. 14

           i.   Differential prices are legal, and describing them as a credit card "surcharge" is
               not false, deceptive, or misleading ...................................................... 14

           ii.  The Kansas no-surcharge statute does not serve any substantial state interest in a
               direct or material way. ................................................................... 15

           iii. The speech restriction is not narrowly tailored to the substantial state interest.... 18

    II.  THE KANSAS NO-SURCHARGE STATUTE VIOLATES CARDX'S DUE PROCESS
        RIGHTS UNDER THE FOURTEENTH AMENDMENT. ........................................... 19

CONCLUSION .......................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).........................................................................................11

*Aptive Environ., LLC v. Town of Castle Rock, Colo.*,
   959 F.3d 961 (10th Cir. 2020) .........................................................13, 14, 15, 16 18

*Cent. Hudson Gas & Electric Corp. v. Public Serv. Comm'n of New York*,
   447 U.S. 557 (1980)..........................................................................4, 12, 14, 18

*Connally v. Gen. Constr. Co.*,
   269 U.S. 385 (1926).........................................................................................19

*Dana's R.R. Supply v. Att'y Gen. of Fla.*,
   807 F.3d 1235 (11th Cir. 2015) ..........................................4, 12, 15, 16, 17, 18, 20

*Edenfield v. Fane*,
   507 U.S. 761 (1993)............................................................................14, 16, 18

*Expressions Hair Design v. Schneiderman*,
   137 S.Ct. 1144 (2017)...............................................................................3, 12, 13

*Expressions Hair Design v. Schneiderman*,
   975 F. Supp. 2d 430 (S.D.N.Y. 2013)..............................................................3, 20

*F.C.C. v. Fox Television Stations, Inc.*,
   567 U.S. 239 (2012).....................................................................................5, 19, 20

*Italian Colors Rest. v. Becerra*,
   878 F.3d 1165 (9th Cir. 2018) ...............................................4, 15, 16, 17, 18, 20

*Italian Colors Rest. v. Harris*,
   99 F. Supp. 3d 1199, 1210 (E.D. Cal. 2015).........................................................20

*Pac. Frontier v. Pleasant Grove City*,
   414 F.3d 1221, 1231 (10th Cir. 2005) ..................................................................15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   986 F. Supp. 2d 207, 230-44 (E.D.N.Y. 2013).....................................................4, 8

*RCP Publ'ns Inc. v. City of Chicago*,
   304 F. Supp. 3d 729 (N.D. Ill. 2018) ..................................................................19

*Rowell v. Paxton*,
336 F. Supp. 3d 724 (W.D. Tex. 2018).......................................................4, 14, 15, 16, 17, 18

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011)..............................................................................................17

*Thompson v. W. States Med. Ctr.*,
535 U.S. 357 (2002)..............................................................................................14

*United States v. Stevens*,
559 U.S. 460 (2010)................................................................................................5

*United States v. Wenger*,
427 F.3d 840 (10th Cir. 2005) ..............................................................................19

*United States v. Williams*,
553 U.S. 285 (2008)..........................................................................................19, 20

*Zauderer v. Off. of Disciplinary Couns. of Sup. Ct. of Ohio*,
471 U.S. 626 (1985)..............................................................................................14

**Statutes**

15 U.S.C. § 1602(q)-(r) ...............................................................................................2

Act of Feb. 27, 1976, Pub. L. No. 94-222, § 3(c)(1) ...................................................2

Act of Oct. 28, 1974, Pub. L. No. 93-945, § 167.........................................................2

Kan. Stat. Ann. 50-623 *et seq.* .................................................................................18

Kan. Stat. Ann. 16a-2-403 ................................................................................1, 2, 4, 11

Kan. Stat. Ann. 16a-6-101 *et seq.* .............................................................................5

Kan. Stat. Ann. 19-122 ........................................................................................5, 11, 17

Kan. Stat. Ann. 72-1176 .......................................................................................5, 11, 17

Kan. Stat. Ann. 75-30,100 ....................................................................................5, 11, 17

**Other Authorities**

Fed. R. Civ. P. 56(c) ...................................................................................................11

Kan. Att'y Gen. Op. No. 86-115 (1986) ...........................................................5, 11, 15

Okla. Att'y Gen Op. No. 2019-12 (Dec. 17, 2019) .....................................................4

Joint Affirm. In Supp. of Mot. to Vacate J. Below, Remand for Dismissal of the
    Compl., and Dismiss the Appeal as Moot, *Expressions Hair Design v.
    Schneiderman* (No. 200), 2019 WL 5258852 (N.Y. Ct. App. Jan. 8, 2019),
    ECF No. 315-2 ....................................................................................................................3

## INTRODUCTION

Kansas businesses are prohibited from passing on credit card transaction fees to credit card-paying customers under Kan. Stat. Ann. 16a-2-403, *Prohibiting surcharge on credit or debit cards* (the "Kansas no-surcharge statute").  The no-surcharge statute forces merchants to absorb the costs of credit card interchange fees—a percentage of each transaction set by the payment card network (e.g., Visa, Mastercard, American Express, or Discover) and paid to the financial institutions (e.g., banks) that issue the credit cards and process the transactions.  Kansas is one of only four states in which a no-surcharge statute remains, as a relic of misguided paternalistic consumer protection regulations adopted in the 1970s and 1980s.  Not surprisingly, this prohibition actually harms Kansas consumers:  prohibiting merchants from passing on these costs to credit-paying customers as "credit card surcharges" forces merchants to pass on these costs to *all* customers through increased prices for goods and services, thus requiring cash-paying customers to subsidize customers using credit cards.  The no-surcharge statute also disproportionately impacts Kansas small businesses who lack the bargaining power to negotiate lower fees with their credit card providers.

Plaintiff CardX, LLC ("CardX") was founded in 2013 to innovate solutions for businesses and other entities overwhelmed by the rising costs of credit card acceptance.  CardX has developed patent-pending technology which enables merchants to virtually instantaneously determine card type and cost of acceptance, and display and process price differentials in compliance with all applicable requirements imposed by credit card companies.  Since 2013, CardX has grown to serve businesses of all sizes, in the 46 U.S. states (and in the District of Columbia) where credit card surcharges are permitted.  CardX's product—which displays the price of the good or service, plus the cost associated with credit card use displayed as a

percentage of the price and in dollars and cents—is prohibited by the Kansas no-surcharge statute.  CardX is therefore unable to sell its product to Kansas merchants.

As a matter of law, the Kansas no-surcharge statute unjustifiably restricts CardX's commercial speech and is impermissibly vague, thereby violating CardX's rights under the First and Fourteenth Amendments to the U.S. Constitution.  For these reasons, CardX respectfully requests that this Court grant its Motion for Summary Judgment, declare that Kan. Stat. Ann. 16a-2-403 is unconstitutional as applied to CardX, and permanently enjoin the Attorney General (and any other person acting in the name of the State of Kansas) from enforcing the no-surcharge statute.

## BACKGROUND:  THE HISTORY OF NO-SURCHARGE RULES

In 1976, the U.S. Congress amended the Truth in Lending Act ("TILA") to implement a federal ban on credit card surcharges.[1]  After the federal surcharge ban lapsed in 1984, ten states—California, Colorado, Connecticut, Florida, Kansas, Maine, Massachusetts, New York, Oklahoma, and Texas—enacted no-surcharge statutes.  Both the federal and state versions of these laws prohibited merchants from informing consumers that the use of a credit card to pay for a good or service would result in a surcharge on the price.  Merchants could, however, communicate the inverse:  that paying with cash would result in a discount from the price.[2]

---

[1] Act of Feb. 27, 1976, Pub. L. No. 94-222, § 3(c)(1) (formerly codified at 15 U.S.C. § 1666f(a)(2)) ("No seller in any sales transaction may impose a surcharge on a cardholder who elects to use a credit card in lieu of payment by cash, check, or similar means.").  This amendment also defined "discount" to mean "a reduction made from the regular price" and "surcharge" to mean "any means of increasing the regular price to a cardholder which is not imposed upon customers paying by cash, check, or similar means." *Id.* § 3(a) (codified at 15 U.S.C. § 1602(q)-(r)).

[2] An earlier amendment to TILA, which is still in effect, ensured that credit card companies could not contractually prohibit retailers from offering cash discounts. *See* Act of Oct. 28, 1974, Pub. L. No. 93-945, § 167 (codified at 15 U.S.C. § 1666f(a)) ("[T]he card issuer may not, by contract or otherwise, prohibit any [retailer] from offering a discount to a cardholder to induce the cardholder to pay by cash, check, or similar means rather than use a credit card.").

Every no-surcharge law that has been challenged in court—those of California, Florida, New York, and Texas—has been found to unconstitutionally restrict commercial speech and fail to advance any substantial state interest in consumer protection.  Challenges to these laws began in 2013, when a group of retailers challenged the New York no-surcharge statute as regulating commercial speech and being unconstitutionally vague.  In *Expressions Hair Design v. Schneiderman*, 975 F. Supp. 2d 430 (S.D.N.Y. 2013), the District Court agreed with the plaintiff merchants that the statute "draws the line between prohibited 'surcharges' and permissible 'discounts' based on words and labels, rather than economic realities," and accordingly "clearly regulates speech, not conduct, and does so by banning disfavored expression."  975 F. Supp. 2d at 444.

Following reversal by the Second Circuit, 808 F.3d 118 (2d Cir. 2015), the U.S. Supreme Court agreed with the District Court that the New York no-surcharge statute, "[i]n regulating the communication of prices rather than prices themselves, [] regulates speech" and is therefore subject to First Amendment scrutiny.  137 S.Ct. 1144, 1151 (2017).  The Court held that the New York no-surcharge statute constituted a restriction on commercial speech, but stopped short of deciding whether the statute passed constitutional muster.  *Id.* (remanding to the Second Circuit to analyze the no-surcharge statute as a speech regulation).[3]

Other federal courts that have examined no-surcharge statutes have unanimously found them unconstitutional under intermediate scrutiny.  Applying the four-part test for regulation of

---

[3] On remand, the Second Circuit certified a question to the New York Court of Appeals regarding what constitutes compliance with the law.  877 F.3d 99, 102 (2d Cir. 2017).  The New York Court of Appeals responded to the certified question as follows:  a merchant is in compliance with the law so long as they disclose the total dollars-and-cents price charged to credit card users.  A "single-sticker" pricing scheme, which requires consumers to engage in an arithmetical calculation to determine the price, is prohibited by the statute.  No. 200, 2019 WL 5258852 (N.Y. Ct. App. Oct. 23, 2018).  Following this determination, the parties filed a joint motion to dismiss with the Second Circuit.  *See* Joint Affirm. in Supp. of Mot. to Vacate J. Below, Remand for Dismissal of the Compl., and Dismiss the Appeal as Moot, ECF No. 315-2 (Jan. 8, 2019).

commercial speech prescribed by *Cent. Hudson Gas & Electric Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557 (1980), the U.S. Courts of Appeals for the Ninth and Eleventh Circuits and the U.S. District Court for the Western District of Texas struck down the no-surcharge statutes of California, Florida, and Texas, respectively, for violating the First Amendment.  *See Italian Colors Rest. v. Becerra,* 878 F.3d 1165 (9th Cir. 2018) (holding California no-surcharge statute unconstitutional); *Dana's R.R. Supply v. Att'y Gen. of Fla.*, 807 F.3d 1235 (11th Cir. 2015) (holding Florida no-surcharge statute unconstitutional); *Rowell v. Paxton*, 336 F. Supp. 3d 724 (W.D. Tex. 2018) (holding Texas no-surcharge statute unconstitutional).  Using the same analysis, the Oklahoma Attorney General recently concluded that the Oklahoma no-surcharge statute violates the First Amendment, under a "plain meaning" definition of the term "surcharge."  *See* The Honorable Michael Brooks, Okla. Att'y Gen Op. No. 2019-12, at 11 (Dec. 17, 2019) (citing *Italian Colors Rest*., 878 F.3d 1165; *Rowell*, 336 F. Supp. 3d 724).

In addition to prohibitions in state laws, major credit card companies historically included contractual no-surcharge provisions in their merchant agreements which precluded merchants from passing on credit card interchange fees to consumers.  That practice ended in 2013 when credit card providers removed such provisions from their merchant contracts.  *See* Stip. Stmt. of Facts ¶¶ 5-6 (Attach. 1) (citing *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 230-44 (E.D.N.Y. 2013), *rev'd and vacated*, 827 F.3d 223 (2d Cir. 2016); Decl. of Jonathan Razi ¶¶ 3-4 (Attach. 1, Exhibit A) ("Razi Decl.") (same).

## STATEMENT OF UNCONTROVERTED MATERIAL FACTS

### I.   THE KANSAS NO-SURCHARGE STATUTE

1.   Kan. Stat. Ann. 16a-2-403 (the "Kansas no-surcharge statute") states as follows:

> No seller or lessor in any sales or lease transaction or any credit or debit card issuer may impose a surcharge on a card holder who elects to use a credit or debit card in lieu of payment by cash, check or similar means. A surcharge is any additional

amount imposed at the time of the sales or lease transaction by the merchant, seller or lessor that increases the charge to the buyer or lessee for the privilege of using a credit or debit card.

Stip. Stmt. of Facts at No. 1.

2. Defendant Derek Schmidt is the Kansas Attorney General, and has the authority in his official capacity to enforce the Kansas no-surcharge statute. *Id.* at No. 2.

3. The Kansas no-surcharge allows cash "discounts" but prohibits credit card "surcharges." *See* The Honorable Ken Francisco, Kan. Att'y Gen. Op. No. 86-115 (1986).

4. The Kansas no-surcharge statute provides exemptions for educational boards and institutions, and state and county entities. *See, e.g.*, Kan. Stat. Ann. 72-1176; Kan. Stat. Ann. 19-122; Kan. Stat. Ann. 75-30,100.

5. Violators of the Kansas no-surcharge statute are subject to, among other things, administrative investigations, cease and desist orders, administrative fines, civil liability for consumer restitution, and civil penalties. *See* Kan. Stat. Ann. 16a-6-101 *et seq.*

6. The Attorney General has recently enforced the no-surcharge statute. *See* Stip. Stmt. of Facts at No. 3; *Topeka Raintree Apartments LLC v. Kansas ex rel. Derek Schmidt*, No. 2019-CV-000440 (Shawnee Cnty. Dist. Ct.) (Attach.2); Denise Neil & Amy Renee Leiker, *Wichita Restaurant to Pay More Than $60,000 for Overcharging Customers Using Credit Cards*, THE WICHITA EAGLE (Feb. 25, 2020) (Attach. 3).[4]

---

[4] Note, however, that in the First Amendment and due process contexts, the "protection against vague regulations 'does not leave regulated parties . . . at the mercy of *noblesse oblige*'"—a statute may be struck down as unconstitutional regardless of enforcement frequency. *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 255 (2012) (quoting *United States v. Stevens*, 559 U.S. 460, 480 (2010)).

II.    **IMPACT OF THE NO-SURCHARGE STATUTE ON KANSAS CONSUMERS AND BUSINESSES**

7.   Merchants are typically charged interchange fees of two to three percent of the purchase price for goods and services, and these fees are continuing to increase.  *See* Razi Decl. at No. 15.

8.   A study by the U.S. Government Accountability Office determined that between 2005 and 2009 alone, interchange fees charged for certain premium rewards credit cards rose by 24%. *Id.* at No. 15.

9.   These rising fees disproportionately impact small businesses—including Kansas small businesses—as larger retailers are able to negotiate discounted fee arrangements with credit card companies due to their large transaction volumes.  *Id.*

10.  Consumers now use rewards credit cards, which are more expensive to accept than standard credit cards, for more than 80% of their credit card purchases.  *Id.*

11.  More recently, Visa reportedly will implement fee structure changes in 2021 that will increase fees for certain transactions, including purchases on e-commerce sites or other "card-not-present" transactions.  *Id.*

12.  In Kansas, merchants remain obligated to absorb the costs of a customer's choice to use a credit card precisely because the no-surcharge statute makes it illegal to communicate differential pricing as a surcharge.  *See id.* at No. 11.

13.  When businesses are unable to pass on the cost of credit card acceptance as a surcharge, that cost is often built into the costs of *all* goods and services sold by that business, which in turn raises prices for all customers regardless of whether they use credit or non-credit payment options.  *See id.* at No. 17.

14. This results in a "cross-subsidy" from non-credit payers to the customers who pay by credit card, which, for the average credit card user, exceeds $1,100 per year. *Id.*

15. Credit card surcharges allow businesses to allocate the costs of credit card acceptance to only those customers who choose to use credit cards. *Id.*

16. Expressing differential pricing as a cash "discount"—as permitted by the Kansas no-surcharge statute—is inaccurate, and disadvantages both businesses and consumers. *Id.* at No. 19.

17. Describing a price differential as a cash "discount" necessitates higher advertised prices to customers than the actual base price of the good or service, which may competitively disadvantage that business. *Id.* at No.18.

18. Businesses often find it difficult to explain the difference between a "surcharge" and a "discount" to employees or representatives, and consequently worry that an employee or representative will inadvertently violate a no-surcharge law by incorrectly describing a price differential. *Id.* at No. 20.

19. Business operators are placed in limbo, not knowing whether they will incur legal liability for conveying truthful information to customers. *Id.*

20. No-surcharge statutes prevent businesses from communicating price differentials to their customers as transparently as possible—informing them that paying by credit card creates a cost and, if they elect to use a credit card, they will bear this cost in the form of an additional fee. *Id.* at No. 19.

21. Confusing representations of price differentials can cause distrust or lead to a negative customer experience. *Id.*

22. Allowing credit card surcharges benefits businesses and consumers.  Some businesses—particularly in industries such as wholesale distribution, construction, and professional services—operate on profit margins so narrow that they are unable to accept payment via credit card unless they are permitted to pass on the cost of credit card acceptance to cardholders.  *Id.* at No. 22.

23. If allowed to pass on the cost of credit card acceptance, such businesses are able to offer their goods and services to the significant portion of the consumer base that prefers or needs to pay with credit.  *Id.*

24. In these industries and across the economy, credit card surcharges expand consumer choice. *Id.*

25. Simply choosing not to accept credit cards is not a viable option for most businesses, because most consumers prefer to pay with credit or debit cards.  *Id.* at No. 21.

26.  Some businesses are also wary of advertising a cash discount or encouraging consumers to pay with cash due to stigmas associating cash transactions with tax avoidance.  *Id.*

27. Following the onset of the coronavirus pandemic, the pressure on merchants to accept credit card payments has become even greater as consumers are increasingly reluctant to use cash and seek contact-free and online payment options.  *Id.* at No. 23.

28. At the same time, merchants that are struggling to remain economically viable are pursuing all available options to reduce expenses, including their credit card costs.  *Id.*

## III.    PLAINTIFF CARDX

29. Plaintiff CardX is a financial technology company headquartered in Illinois and incorporated in Delaware.  Stip. Stmt. of Facts at No. 4.

30. CardX was founded in 2013, on the heels of the settlement reached in *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*., 986 F. Supp. 2d 207 (E.D.N.Y. 2013), *rev'd*

*and vacated*, 827 F.3d 223 (2d Cir. 2016), which resulted in major credit card companies changing their rules so as to allow merchants to apply credit card surcharges.  Stip. Stmt. of Facts at No. 5.

31. These new rules enabled U.S. businesses to pass on the transaction fee when customers choose credit cards (often for their convenience or rewards).  The new rules imposed numerous contractual requirements on businesses that seek to surcharge.  These requirements mandate that, in order to surcharge, merchants must:

    a.  Be registered with Visa and Mastercard prior to surcharging;

    b.  Make disclosures to consumers, which include the surcharge amount;

    c.  Apply a surcharge no greater than (i) what the merchant pays to their credit card processing provider (*i.e.*, the merchant must not profit from the surcharge) or (ii) 4% of the transaction amount, whichever is less;

    d.  Identify debit cards and prepaid cards to ensure they are not surcharged;

    e.  Itemize the surcharge amount on the customer receipt; and

    f.  Refund the surcharge amount if the original transaction is refunded.

    Razi Decl. at No. 4.

32. Since 2013, CardX has contracted with more than 5,000 merchants, ranging from Main Street small businesses to public companies, in the 46 U.S. states (and in the District of Columbia) where credit card surcharges are currently permitted.  *Id.* at No. 10.

33. CardX has established itself as the thought leader in surcharging compliance and the field of credit card cost management more generally, and is dedicated to providing much-needed innovation to allow businesses to offset the rising costs of credit card acceptance.  *Id.* at No. 12.

34. To help as many businesses as possible address the rising costs of credit cards, CardX advocates for compliant surcharging as a means of improving merchant affordability and promoting consumer fairness.  These efforts have included contributing an *amicus curiae* brief in the landmark U.S. Supreme Court case *Expressions Hair Design v. Schneiderman*, in which the Court held in March 2017 that state no-surcharge laws restrict constitutionally protected commercial speech and that such laws do not regulate economic activity.  *Id.* at No. 13.

35. CardX brings this constitutional challenge because CardX is unable to sell its payment software to Kansas businesses.  *See* Stip. Stmt. of Facts at No. 8.

36. CardX's standard pricing model displays the price of the good or service, plus the cost associated with credit card use both as a percentage of the price and in dollars and cents.  *See id*. at No. 11, Figs. 1, 2 & 3.

37. This pricing model is used for both online displays, and on payment terminal signage and screen displays.  *Id*.

38. This model ensures that the surcharge is always equal to the merchant's actual credit card processing cost, and that no surcharges are applied to debit card purchases.  *See id*. at Nos. 12-13.

39. CardX's patent-pending payment processing software allows merchants to display and process price differentials in compliance with all applicable credit card company requirements.  *Id*. at No. 10.

40. The Kansas no-surcharge statute, as it has been interpreted and enforced by the Defendant, prohibits Kansas merchants from communicating price differentials in the manner displayed by CardX's product.  *See id*. at No. 9.

## ARGUMENT

Summary judgment is appropriate where there is no dispute as to the material facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Here, based on the undisputed facts, the Kansas no-surcharge statute violates the First and Fourteenth Amendments to the U.S. Constitution as applied to plaintiff CardX as a matter of law.  CardX respectfully requests this Court grant its Motion for Summary Judgment, declaring Kansas's no-surcharge statute unconstitutional as applied to CardX, and permanently enjoining the Attorney General (and any other person acting in the name of the State of Kansas) from enforcing the no-surcharge statute.

**I.  THE KANSAS NO-SURCHARGE STATUTE RESTRICTS CARDX'S COMMERCIAL SPEECH IN VIOLATION OF THE FIRST AMENDMENT.**

The Kansas no-surcharge statute impermissibly infringes on the commercial speech of CardX as a matter of law.  The Kansas no-surcharge statute reads as follows:

> No seller or lessor in any sales or lease transaction or any credit or debit card issuer may impose a surcharge on a card holder who elects to use a credit or debit card in lieu of payment by cash, check or similar means. A surcharge is any additional amount imposed at the time of the sales or lease transaction by the merchant, seller or lessor that increases the charge to the buyer or lessee for the privilege of using a credit or debit card.

Kan. Stat. Ann. 16a-2-403.  Exempt from the no-surcharge statute are educational boards and institutions, and state and county entities.  *See, e.g.*, Kan. Stat. Ann. 72-1176; Kan. Stat. Ann. 19-122; Kan. Stat. Ann. 75-30,100.  Under a 1986 Kansas Attorney General Opinion, "a discount for cash payment is not a surcharge as that term is used in" the no-surcharge statute.  *See* The Honorable Ken Francisco, Kan. Att'y Gen. Op. No. 86-115 (1986).  In short, the Kansas no-surcharge statute prohibits a credit card "surcharge" yet allows a cash "discount."  It is therefore

substantively indistinguishable from the California, Florida, New York, Oklahoma, and Texas no-surcharge statutes determined to be unconstitutional under the First Amendment.

"The First Amendment, as applied to the States through the Fourteenth Amendment, protects commercial speech from unwarranted governmental regulation." *Cent. Hudson Gas & Elec. Corp.*, 447 U.S. at 561. This is because "[c]ommercial expression not only serves the economic interest of the speaker, but also assists consumers and furthers the societal interest in the fullest possible dissemination of information." *Id.* at 561-62. After all, "[p]eople will perceive their own best interests if only they are well enough informed, and . . . the best means to that end is to open the channels of communication rather than to close them[.]" *Id.* at 562. (internal quotations omitted). Federal courts have made it abundantly clear that, while "[l]aws that target real-world commercial activity need not fear First Amendment scrutiny," "[p]aternalistic efforts at social engineering are anathema to constitutional first principles." *Dana's R.R. Supply*, 807 F.3d at 1251.

Restrictions on commercial speech are scrutinized under the four-part test prescribed in *Cent. Hudson*: (1) "[i]f the communication is neither misleading nor related to unlawful activity," (2) "[t]he State must assert a substantial interest to be achieved by restrictions on commercial speech," (3) "the regulatory technique must be in proportion to that interest," and (4) "[t]he limitation on expression must be designed carefully to achieve the State's goal." 447 U.S. at 564.

Like its unconstitutional analogues, the Kansas law draws an arbitrary line that prohibits credit card surcharges yet allows cash discounts. Under the U.S. Supreme Court's holding in *Expressions Hair Design v. Schneiderman*, 137 S.Ct. 1144 (2017), and its progeny, the Kansas statute constitutes a restriction on commercial speech, not a regulation of commercial activity,

and is subject to intermediate scrutiny.  Under the intermediate scrutiny analysis, the no-surcharge statute violates the First Amendment to the U.S. Constitution as a matter of law, because it does not serve a substantial state interest, and even if it did, it is not narrowly tailored to any such substantial interest.

      **A.**      **<u>The Kansas No-Surcharge Statute Is Subject to Intermediate Scrutiny Under the First Amendment Because It Restricts Commercial Speech.</u>**

When the text of a law makes "facial distinctions," that law "contemplates a distinction based on content," and is subject to First Amendment scrutiny.  *Aptive Environ., LLC v. Town of Castle Rock, Colo.*, 959 F.3d 961, 983 (10th Cir. 2020).  A no-surcharge statute that prohibits credit card surcharges while permitting cash discounts constitutes a content-based restriction on protected commercial speech, rather than "simply a conduct regulation."  *See Expressions Hair Design*, 137 S.Ct. at 1150.  As the U.S. Supreme Court explained in *Expressions Hair Design*, the New York no-surcharge law regulated speech because "[t]he law tells merchants nothing about the amount they are allowed to collect from a cash or credit card payer. . . . What the law does regulate is how sellers may communicate their prices.  A merchant who want to charge $10 for cash and $10.30 for credit may not convey that price any way he pleases. . . . In regulating the communication of prices rather than the prices themselves, [the no-surcharge statute] regulates speech."  *Id.* at 1151.

The Kansas no-surcharge statute functions exactly as the New York no-surcharge statute did.  It allows a price differential to be expressed as a "cash discount," but prohibits the same price differential from being expressed as a "credit card surcharge."  This is a purely content-based distinction, restricting how prices are communicated rather than any actual conduct.  *See id.*  Therefore, the Kansas no-surcharge statute constitutes a restriction on commercial speech and is subject to intermediate scrutiny.

**B.**     **The Kansas No-Surcharge Statute Fails Intermediate Scrutiny**.

Restrictions of commercial speech are scrutinized under an "intermediate standard of review." *Aptive Environ., LLC*, 959 F.3d at 987 (applying "[t]he test enunciated in *Cent. Hudson*"). The "threshold" step of this review determines "whether the regulated speech is lawful and not misleading." *Id.* at 987 n.10. Following that threshold step, "[i]n determining whether commercial speech may be proscribed, [a court] must ask [1] whether the State's interests in proscribing it are substantial, [2] whether the challenged regulation advances these interests in a direct and material way, and [3] whether the extent of the restriction on protected speech is in reasonable proportion to the interests served." *Id.* at 987 (quoting *Edenfield v. Fane*, 507 U.S. 761, 767 (1993)). "Each of these latter three inquiries must be answered in the affirmative for the regulation to be found constitutional." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 366 (2002). The State "bears the burden on all three prongs." *Aptive Environ., LLC*, 959 F.3d at 987-88 (citing *Edenfield*, 507 U.S. at 770 ("It is well established that the party seeking to uphold a restriction on commercial speech carries the burden of justifying it.")).

> ***i.***     ***Differential prices are legal, and describing them as a credit card "surcharge" is not false, deceptive, or misleading***.

"A state is 'free to prevent the dissemination of commercial speech that is false, deceptive, or misleading.'" *Rowell*, 336 F. Supp. 3d at 730 (quoting *Zauderer v. Off. of Disciplinary Couns. of Sup. Ct. of Ohio*, 471 U.S. 626, 638 (1985)). However, if commercial speech "is neither misleading nor related to unlawful activity," then the speech is constitutionally protected and the limiting statute must meet the remaining three criteria of the intermediate scrutiny analysis. *Cent. Hudson*, 447 U.S. at 564.

The federal courts examining the California, Florida, and Texas no-surcharge statutes found that charging different prices for credit card and non-credit transactions is clearly lawful—

as the no-surcharge statutes at issue permitted cash discounts, which are the "mathematical equivale[nt]" of credit card surcharges—and is not misleading so long as the price differential is communicated to consumers.  *Italian Colors Rest.,* 878 F.3d at 1176; *Dana's R.R. Supply,* 807 F.3d 1239, 1249 ("Tautologically speaking, surcharges and discounts are nothing more than two sides of the same coin[.]"); *Rowell,* 336 F. Supp. 3d at 730.

The Kansas no-surcharge statute also allows cash discounts while prohibiting credit card surcharges.  *See* The Honorable Ken Francisco, Kan. Att'y Gen. Op. No. 86-115 (1986).  In allowing cash discounts, the statute clearly contemplates that differential pricing for cash and credit card payments is not misleading or unlawful so long as such pricing is communicated to consumers.  *See Italian Colors Rest.,* 878 F.3d at 1176; *Dana's R.R. Supply,* 807 F.3d at 1239, 1249; *Rowell,* 336 F. Supp. 3d at 730.  Describing a price differential as a cash discount—rather than a credit card surcharge—is actually inaccurate and potentially misleading, as such price differentials are attributable to the cost of processing credit card transactions.  *See* Stmt. of Uncontroverted Facts Nos. 16-17.  The Kansas no-surcharge statute therefore constitutes a restriction on protected commercial speech.

> ii.     ***The Kansas no-surcharge statute does not serve any substantial state interest in a direct or material way***.

To withstand intermediate scrutiny, the State "must assert a substantial interest to be achieved by restrictions on commercial speech."  *Aptive Environ., LLC*, 959 F.3d at 988 (internal quotations omitted).  This standard does not permit assumptions or suppositions about the State's interest—it relies solely on "the precise interests put forward by the State."  *Id.*  "'[I]f the regulation provides only ineffective or remote support for the government's purpose, it will not be upheld.'"  *Id.* (quoting *Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1231 (10th Cir. 2005)) (internal quotations omitted).  The support proffered by the State may not be

hypothetical:  the State "'must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.'"  *Id.* (quoting *Edenfield*, 507 U.S. at 770-71).  Any evidence presented by the State in support of its restriction is "evaluate[d] . . . in light of the cases where those categories of evidence have previously been invoked."  *Id.* at 989.

The State has yet to put forth a "precise interest" to be achieved by the no-surcharge statute.  However, without making assumptions or suppositions, the State of Kansas appears to view consumer protection as the primary interest intended to be served by the Kansas no-surcharge statute.  *See, e.g.*, Verified Pet. for Declaratory J., *Topeka Raintree Apartments LLC v. Kansas ex rel. Derek Schmidt*, No. 2019-CV-000440 (Shawnee Cnty. Dist. Ct.), at 15 (June 12, 2019) (Attach. 2) (enclosed enforcement letter from Ed Burr, Investigator, Office of Attorney General Derek Schmidt to Raintree Apartments noting that the Attorney General's Office staff investigates surcharge-related consumer complaints "in enforcing laws designed to protect the public from deceptive and unconscionable business acts and practices").

In any event, generalized state interests in consumer protection and promoting the free market do not sufficiently justify a restriction on commercial speech.  For example, in defense of their respective states' no-surcharge statutes, the California Attorney General "assert[ed] that the state's interest in banning surcharges is to 'promote the effective operation of the free market and protect consumers from deceptive price increases,'" while the Florida and Texas Attorneys General both asserted "a generalized interest in consumer protection."  *Italian Colors Rest.*, 878 F.3d at 1177; *Dana's R.R. Supply*, 807 F.3d at 1249; *Rowell*, 336 F. Supp. 3d at 731.  None of the relevant courts were persuaded that the no-surcharge statutes *actually* advanced the protection of consumers or promotion of commerce.  To the contrary, the Ninth Circuit observed that California's no-surcharge statute "prevents retailers . . . 'from communicating with their

customers in an effective and informative matter' about the cost of credit card usage and why credit card customers are charged more than cash users." *Italian Colors Rest.*, 878 F.3d at 1177 (quoting *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564 (2011)). The Court "fail[ed] to see how a law that keeps truthful price information from customers increases the accuracy of information in the marketplace." *Id.*; *accord Dana's R.R. Supply*, 807 F.3d at 1250; *Rowell*, 336 F. Supp. 3d at 731 ("[T]here is no actual, empirical evidence before the court of harm to consumers or commerce, past or present, in restricting [] merchants . . . from communicating to their customers that they will charge a surcharge for a credit-card purchase[.]").

Both the Ninth and Eleventh Circuits also pointed to broad exemptions to the no-surcharge statutes for public agencies, "without . . . any relevant distinction between private merchants and state agencies that references the asserted interests being served," as further undermining the legitimacy of the states' purported interests in consumer protection. *Dana's R.R. Supply*, 807 F.3d at 1250; *see also Italian Colors Rest.*, 878 F.3d at 1177 ("Even if there were evidence of consumer deception, or other harm to the free market, the statute's broad swath of exemptions would undermine any ameliorative effect.").

Even if the State of Kansas has a substantial interest in protecting consumers, the Kansas no-surcharge statute does not serve that interest. Similar to the California, Florida, and Texas statutes that were struck down, the Kansas no-surcharge statute contains exemptions that undermine any purported purpose of consumer protection, including exemptions for educational boards and institutions, and state and county entities. *See, e.g.*, Kan. Stat. Ann. 72-1176; Kan. Stat. Ann. 19-122; Kan. Stat. Ann. 75-30,100. The no-surcharge statute does not protect consumers—instead, it raises prices for non-credit paying customers, creates confusion, and restricts consumer choice. *See* Stmt. of Uncontroverted Facts Nos. 13-28. Accordingly, the

Kansas no-surcharge statute cannot withstand intermediate scrutiny because even if "the State's interests in proscribing [credit card surcharges] are substantial," the "challenged regulation" does not advance that interest "in a direct and material way." *Aptive Environ., LLC*, 959 F.3d at 987.

### iii. *The speech restriction is not narrowly tailored to the substantial state interest*.

Finally, even if the preceding steps of the intermediate scrutiny inquiry are met, the law must be "tailored in a reasonable manner to serve a substantial state interest[.]" *Aptive Environ., LLC*, 959 F.3d at 989 (quoting *Edenfield*, 507 U.S. at 767). "[T]he regulation is unconstitutional if the governmental interest could be served as well by a more limited restriction on commercial speech." *Id.* (internal quotations omitted). "[E]xcessive restrictions cannot survive." *Cent. Hudson*, 447 U.S. at 564.

The California, Florida, and Texas no-surcharge statutes were found to be "more extensive than is necessary" to serve state interests of avoiding consumer deception and promoting the free market. *See, e.g.*, *Rowell*, 336 F. Supp. 3d at 731. The reviewing courts found that "[t]he available less [] restrictive alternatives are legion," *Dana's R.R. Supply*, 807 F.3d at 1250, such as imposing a cap on credit card surcharges, requiring specific points of disclosure, "ban[ning] deceptive or misleading surcharges," or simply enforcing "existing laws banning unfair business practices and misleading advertising in pricing," *Italian Colors Rest.*, 878 F.3d at 1178.

The State of Kansas could use any number of enforcement mechanisms to actually prevent fraudulent or deceptive credit card surcharge practices, if any arise, such as its Consumer Protection Act, Kan. Stat. Ann. 50-623 *et seq.* Moreover, the rules imposed by major credit card providers in the United States prohibit merchants from over-charging for credit card fees and impose other restrictions mandating the accuracy and transparency of credit card surcharges. *See*

Stmt. of Uncontroverted Facts at No. 31.  CardX's technology, in turn, ensures compliance with the credit card rules, further protecting consumers.  *Id.* at No. 39.

Even if the Kansas no-surcharge statute is found to serve a state interest in consumer protection—which it does not—it still fails to pass constitutional muster because it is not narrowly tailored to that interest.  The Kansas no-surcharge law imposes an impermissible restriction on protected commercial speech and therefore violates the First Amendment to the U.S. Constitution as applied to CardX.

## II.   THE KANSAS NO-SURCHARGE STATUTE VIOLATES CARDX'S DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT.

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required."  *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (citing *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)).  This principle "requires the invalidation of laws that are impermissibly vague."  *Id.*  A law is impermissibly vague if it (1) "fails to provide a person of ordinary intelligence fair notice of what is prohibited," or (2) "is so standardless that it authorizes or encourages seriously discriminatory enforcement."  *Id.* (internal quotations omitted).  "When speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech."  *Id.* at 253-54; *see also United States v. Wenger*, 427 F.3d 840, 851 (10th Cir. 2005) ("Stricter standards of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech.") (internal quotations omitted).  Statutes relying on confusing or vague terms subject to "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings" can be struck down under the Fourteenth Amendment.  *United States v. Williams*, 553 U.S. 285, 306 (2008); *see also RCP Publ'ns Inc. v. City of Chicago*, 304 F. Supp. 3d 729, 743-44 (N.D. Ill. 2018) (noting failure to define statutory

terms results in a lack of guidance as to what conduct violates the statute, and can enable "enforcing officials . . . to make wholly subjective and arbitrary decisions[.]")

Courts have recognized the practical difficulty of determining whether merchant representations actually violate a no-surcharge statute. *See, e.g.*, *Expressions Hair Design*, 975 F. Supp. 2d at 435 ("*Alice in Wonderland* has nothing on [New York's no-surcharge statute].");  *Italian Colors Rest. v. Harris*, 99 F. Supp. 3d 1199, 1210 (E.D. Cal. 2015), *aff'd sub nom Italian Colors Rest.*, 878 F.3d 1165 (holding California no-surcharge statute void for vagueness and agreeing with Plaintiffs that it "does not clearly define the line between a permissible 'surcharge' and a mathematically equivalent but illegal 'discount.'").[5]

Similarly, the Kansas no-surcharge statute does not define the term "surcharge," and arbitrarily distinguishes between a "surcharge" and a "discount," prohibiting the former while permitting the latter.  Courts examining analogous no-surcharge statutes have found that these two terms describe the exact same conduct; "[t]autologically speaking, surcharges and discounts are nothing more than two sides of the same coin[.]"  *Dana's R.R. Supply*, 807 F.3d at 1249. This "virtually incomprehensible distinction between what a vendor can and cannot tell its customers" offends the Due Process Clause of the Fourteenth Amendment, because the "indeterminacy of precisely what" constitutes a prohibited "surcharge" poses a significant risk of arbitrary, standardless, or even discriminatory enforcement.  *See Williams*, 553 U.S. at 306; *Fox Television Stations*, 567 U.S. at 253; *see also* Stmt. of Uncontroverted Facts Nos. 18-19 (noting difficulty businesses face in training employees or representatives to use the permitted

---

[5] On appeal, the U.S. Court of Appeals for the Ninth Circuit affirmed the District Court's holding that the California no-surcharge statute violated the First Amendment, but did not reach the question of whether the statute was void for vagueness.

terminology, and businesses' concern that they may face legal liability for conveying truthful information to customers).

CardX has determined not to conduct business in the State of Kansas for fear of enforcement actions under the Kansas no-surcharge statute, which is susceptible to arbitrary, standardless, and discriminatory enforcement.  *See* Stmt. of Uncontroverted Facts Nos. 35, 40. The Kansas no-surcharge statute is therefore impermissibly vague as applied to CardX in violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

## CONCLUSION

CardX respectfully requests that this Court enter an order granting Plaintiff's Motion for Summary Judgment, declaring Kansas's no-surcharge statute unconstitutional as applied to CardX, and permanently enjoining the Attorney General (and any other person acting in the name of the State of Kansas) from enforcing the no-surcharge statute.

Dated: September 11, 2020

Respectfully Submitted,

POLSINELLI PC

By:  _s/ Timothy J. Sear_____
TIMOTHY J. SEAR (KS #14813)
JOHN D. PETERSEN (KS #09775)
900 West 48th Place, Suite 900
Kansas City, MO  64112
Telephone: (816) 753-1000 (Main)
Facsimile: (816) 753-1536 (Main)
E-mail: tsear@polsinelli.com
E-mail: jpetersen@polsinelli.com

AND

COZEN O'CONNOR
BERNARD NASH (DC #231118)
SEAN RILEY (DC #1048065)
KETURAH TAYLOR (DC #241560)
(admitted *pro hac vice*)
1200 19th Street, NW, Suite 300

Washington, D.C. 20036
Telephone: (202) 471-3406
Facsimile: (202) 861-1905
E-mail: bnash@cozen.com
E-mail: sriley@cozen.com
E-mail: ktaylor@cozen.com

ATTORNEYS FOR CARDX, LLC

## **CERTIFICATE OF SERVICE**

Counsel for Plaintiff hereby certifies that on September 11th, 2020, the foregoing document was filed electronically with the Clerk of the Court via the Court's CM/ECF system, which sent notification of such filing to all registered counsel of record.

    _s/ Timothy J. Sear_____
                Attorney for Plaintiff